**COLUMBIA RIVER PACKERS' ASS'N, Inc., et al. v. UNITED STATES et al.**

Circuit Court of Appeals, Ninth Circuit. October 29, 1928.

No. 5524.

John K. Kollock and Oswald West, both of Portland, Or., for appellant Columbia River Packers' Ass'n.

I. H. Van Winkle, Atty Gen., and Willis S. Moore, Asst. Atty. Gen., for appellants Patterson and others.

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or.

Clark, Skulason & Clark, of Portland, Or., for appellee Barbey.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

RUDKIN, Circuit Judge. This suit was instituted by the United States and its lessee, against the state land board of the state of Oregon and its lessee, to establish the right and title of the United States to Sand Island, at the mouth of Columbia river, and to the tide and shore lands adjacent thereto. From a decree in favor of the plaintiffs, the defendants have appealed.

Sand Island is within the limits of the state of Oregon, and the adjacent tide and shore lands, up to high-water mark, originally belonged to that state. Washington v. Oregon, 211 U. S. 127, 29 S. Ct. 47, 53 L. Ed. 118; Shively v. Bowlby, 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331.

April 21, 1863, by order of the President, the island was set apart or reserved for military purposes, and October 24, 1864 (Sp. Laws Or. 1864, p. 72) the state of Oregon passed an act granting to the United States "all the right and interest of the state of Oregon in and to the land in front of Ft. Stevens and Point Adams, situate in this state, and subject to overflow between high

and low tides; also to Sand Island, situate at the mouth of Columbia river in this state; the said island being subject to overflow between high and low tide." The island has never been used by the United States for military purposes, but June 19, 1880, officers of the United States Army, acting under the orders of the Commanding General of the Department of Columbia, leased the island for general fishing purposes for one year and the lease was renewed for four years thereafter. The leasing was then discontinued, apparently for want of authority on the part of the army officers or the War Department to execute such leases. Later, by the Act of July 28, 1892 (27 Stat. 321; 40 USCA § 303), the Secretary of War was authorized, when in his discretion it will be for the public good, to lease for a period not exceeding five years, and revocable at any time, such property of the United States under his control as may not for the time be required for public use, and for the leasing of which there is no authority under existing law; such leases to be reported annually to Congress. Pursuant to the authority thus conferred, the Secretary of War has leased the island and the adjacent tide and shore lands for fishing purposes since 1903, and there has been paid to the United States as rental upwards of $400,000. So far as the record discloses, the state of Oregon made no claim to the property, and made no objection to the government leases until the year 1925. ▆▆▆ After the lapse of nearly 70 years it would seem that a grant such as was made by the state of Oregon in this case should not be open to further controversy, especially in view of the fact that the grantee has asserted and exercised dominion over the granted premises for upwards of 25 years. Nevertheless, the state of Oregon now contends, first, that the grant was for military or naval purposes only; and, second, that the grant has never been accepted by Congress. But the grant itself is absolute in form, without limitation or condition, and it would violate every known rule of statutory construction to ingraft upon it now any such limitation or condition as that contended for by the appellees, especially in view of the construction the parties themselves have placed upon the grant for so long a period. There must, of course, be an acceptance by Congress in some form of a grant such as this, but such acceptance may be implied from other legislation. Virginia v. Tennessee, 148 U. S. 503, 13 S. Ct. 728, 37 L. Ed. 537. Here we must assume that the

leases executed by the Secretary of War were reported annually to Congress as required by law; the rentals, exceeding $400,000 in amount, have been paid into the treasury of the United States, and have been appropriated therefrom by Congress. This was a sufficient recognition of the grant and claim of title by the United States to constitute an acceptance. Furthermore, long acquiescence by the state in the assertion of title and the exercise of dominion over the property by the United States should be deemed conclusive at this late day. Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329.

We find no merit in the appeal, and the decree is therefore affirmed.